UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SCARLET JENKINS, | ) |
|     Plaintiff, | ) ) ) ) Case No. 3:12-cv-1280 ) Judge Trauger |
| v. | ) ) |
| TRANE U.S., INC., | ) ) |
|     Defendant. | ) |

## MEMORANDUM

Pending before the court is the defendant's Motion to Dismiss Second Amended Complaint (Docket No. 25), to which the plaintiff has responded (Docket No. 31). Also before the court is the defendant's Motion to Strike (Docket No. 33), to which the plaintiff has responded (Docket No. 35). For the reasons discussed herein, the defendant's Motion to Dismiss will be granted in part and denied in part, while its Motion to Strike will be denied.

## BACKGROUND

The plaintiff, Scarlet Jenkins, is an African American female who was hired by the defendant, Trane U.S., Inc. ("Trane") on May 9, 1988. After suffering a work-related injury to her left thumb, she alleges that Trane failed to accommodate her and otherwise failed to select her for open positions within the company to which she applied. She also alleges that, by engaging in these actions, Trane discriminated against her on account of her disability and race in violation of federal and state law.

On April 10, 2010, the plaintiff injured her left thumb while working as a Demand Flow

1

Specialist at Trane.[1]  She underwent surgery for this injury on July 14, 2010 and returned to work without restrictions on December 1, 2010, where she attempted to perform her duties as a Demand Flow Specialist.  After working for a few days without restrictions, the plaintiff visited her physician on December 7, 2010.  During that visit, her physician assigned her work restrictions limiting the use of her left thumb.

Upon returning to work, the plaintiff requested that Trane provide her with a reasonable accommodation, given the restrictions imposed by her physician.[2]  Over the next few days, she worked for limited hours with restricted use of her left thumb.  However, on December 9, 2010, Trane notified the plaintiff that no work was available for her, given the condition of her left thumb.  Around that time, Trane placed the plaintiff on a medical leave of absence, but advised her to apply for other positions within the company.  The plaintiff currently remains on unpaid medical leave.

On March 28, 2011, the plaintiff underwent a second surgery to her left thumb.  She then reached maximum medical improvement on May 24, 2011 and was provided a return to work form by her treating physician bearing the same date.  The form contained an internal inconsistency, as it stated that she could return to work with no restrictions,[3] but nonetheless

---

[1] Unless otherwise noted, the factual allegations are drawn from the plaintiff's Second Amended Complaint. (Docket No. 22.)

[2] The Second Amended Complaint does not specify what accommodation the plaintiff sought.

[3] It also left blank the section that was to be completed only if a patient was returning to work with restrictions.

instructed her to avoid forceful pinching and repetitive impact to her left thumb.[4] After instructing the plaintiff to avoid such activities, her physician wrote on the form in parentheses "same restrictions." (Docket No. 32-1 at 3.)

In any event, the plaintiff took the form to Trane on May 24, 2011 and spoke with the company nurse, who expressed her belief that the plaintiff would be able to return to work. Nevertheless, the nurse referred her to the Human Resources Department to seek confirmation. The plaintiff then met with a Human Resources employee, Kevin Mailer, who informed her that, based on the contents of the form, the plaintiff could not return to work. In response to a query from the plaintiff concerning her employment status, Mailer informed her that she was still a Trane employee.

Mailer responded to another query the next month, this time from the plaintiff's employee representative. Specifically, Mailer was asked whether any work was available for the plaintiff at the time. He responded that no work was available, given the contents of the May 24, 2011 return to work form.

As previously stated, Trane advised the plaintiff to apply for other positions within the company when it placed her on medical leave in December of 2010. On April 3, 2012, the plaintiff submitted a bid or shift request for an open position in Department 825 Overtime Group 2. The plaintiff alleges that she was capable of performing the work associated with this position,

---

[4] The court may consider this document while ruling on the pending motion, as it is central to her claims, and Trane has not objected to its authenticity or relevance. *See Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) ("While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document") (citations, internal quotation marks, and alterations omitted).

notwithstanding the condition of her left thumb. Nevertheless, she was not selected for the position, despite the fact that she had more seniority than the employee who was ultimately chosen for the job. According to the plaintiff, Trane had a policy or practice of awarding such positions to the employee having the most seniority who submitted a bid, which in this case was her. Trane never explained to the plaintiff why it did not select her for this position.

Additional vacancies in Department 825 Overtime Group 2 arose, and the plaintiff submitted a bid for each vacant position on May 25, 2012 and June 25, 2012 respectively. The plaintiff again alleges that she was capable of performing the work associated with these positions, despite the condition of her left thumb. She also alleges that she had more seniority than any other employee who submitted a bid. However, the plaintiff was still unsuccessful in obtaining either position, as Trane chose employees who had less seniority than she, notwithstanding its policy or practice of awarding positions to those applicants possessing the most seniority. Trane again failed to explain to the plaintiff why she was not selected for either position.

The plaintiff alleges that, at all relevant times, Trane failed to make a reasonable accommodation for her left thumb injury and failed to return her to her Demand Flow Specialist position or any other available position within the company. She also alleges that, unlike several similarly situated disabled white employees, she was never provided with reasonable accommodations or offered positions with the company after it became aware of her disability.

The plaintiff commenced this action in the Circuit Court for Montgomery County on October 25, 2012, alleging state law disability and race discrimination claims under the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103, and the Tennessee Human

4

Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.* (Docket No. 1-1 ¶¶ 17-18.) The following day, the plaintiff received a Right to Sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC") in connection with a Charge of Discrimination she had filed on May 17, 2012. Trane subsequently removed the action to this court on December 7, 2012. (Docket No. 1.) Shortly thereafter, the plaintiff amended her Complaint to add federal disability and race discrimination claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Docket No. 11 ¶¶ 19-20.)

Trane had previously moved to dismiss both the Complaint and Amended Complaint, arguing that the plaintiff's claims were time-barred and that her allegations with respect to the nature of her physical restrictions as of May 24, 2011 were contradictory. (*See* Docket Nos. 5 and 13.) With respect to the issue of contradictory allegations, Trane argued, in its first Motion to Dismiss, that the plaintiff's allegation that she was cleared to return to work without restrictions on May 24, 2011 was inconsistent with her previous assertion in a state workers' compensation Complaint that she was assigned permanent work restrictions on the same date. (Docket No. 6 at 6-9.) Thus, Trane argued that the plaintiff's claims should have been dismissed under the doctrine of judicial estoppel. (*Id.* at 9.) In its second Motion to Dismiss, Trane contended that the Amended Complaint, in which the plaintiff alleged that she returned to work on May 24, 2011 with restrictions on her left thumb, contradicted the prior assertion in her EEOC charge that she returned to work on the same date without restrictions. (Docket No. 14 at 4-7.) It argued that this inconsistency warranted dismissal of the plaintiff's claims. (*Id.* at 7.)

The court denied both of Trane's motions as moot, in light of the plaintiff's filing of an Amended Complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1) and her filing of the Second Amended Complaint with leave from the court pursuant to Fed. R. Civ. P. 15(a)(2). (Docket Nos. 12 and 20.) The Second Amended Complaint was filed on February 8, 2013, wherein the plaintiff changed her allegations to reflect the confusing nature of the May 24, 2011 return to work form. (Docket No. 22.) Trane filed the pending Motions to Dismiss and Strike on February 25, 2013 and March 26, 2013 respectively. (Docket Nos. 25 and 33.)

## ANALYSIS

The defendant has moved for dismissal of the plaintiff's Second Amended Complaint on the ground that it fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## II. The Defendant's Motions

Trane makes four arguments here, all of which have been raised at one time or another in its prior Motions to Dismiss. First, it argues that the plaintiff's Title VII and ADA claims are barred under the doctrine of judicial estoppel, due to the inconsistency between the Second Amended Complaint and her prior workers' compensation Complaint on the issue of her physical restrictions. (Docket No. 26 at 5-7.) Next, it contends that these claims are barred due to a second inconsistency concerning the issue of the plaintiff's restrictions, this time between the Second Amended Complaint and her prior EEOC charge. (*Id.* at 8-10.) Trane next contends that all of the plaintiff's claims are time-barred. (*Id.* at 11-12.) Finally, Trane argues that the plaintiff's failure to accommodate claim under the TDA must be dismissed because such a claim is not cognizable under the statute. (*Id.* at 12.) Before delving into these arguments, the court will first address Trane's Motion to Strike.

### A. Motion to Strike

Trane contends that the court should strike the plaintiff's affidavit attached to her response to the pending Motion to Dismiss. (Docket No. 33.) Specifically, it argues that the

7

affidavit should be stricken because it is outside the pleadings and does not otherwise meet any of the exceptions under which courts in this circuit are authorized to review such documents. (Docket No. 24 at 2.) It also asserts that the affidavit contains statements that are inadmissible as evidence. (*Id.* at 2-3.)

Trane's motion will be denied. Save for a few sentences, the plaintiff's affidavit contains statements that are nearly identical to the allegations appearing in the Second Amended Complaint. It also attaches the May 24, 2011 return to work form, the interpretation of which has led to significant controversy between the parties.[5] The court thus sees no reason to strike the affidavit from the record. Nonetheless, to the extent that it contains material that does not appear in either the Second Amended Complaint or the May 24, 2011 return to work form, the court will disregard the affidavit in the course of ruling upon the pending Motion to Dismiss.

### B. Judicial Estoppel

Trane argues that a comparison of the allegations in the Second Amended Complaint with those appearing in a prior workers' compensation Complaint reveal that the plaintiff has advanced contrary assertions concerning her physical restrictions. (Docket No. 26 at 5-7.) Thus, it asserts that the plaintiff is judicially estopped from advancing her ADA and Title VII claims here. (*Id.* at 7.) The court disagrees.

The Supreme Court has described the rule of judicial estoppel in the following manner: "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the

---

[5] Again, because Trane has not objected to its authenticity or relevance, the court may consider the return to work form while ruling on the pending Motion to Dismiss. *See supra* n. 4.

position formerly taken by him."⁶ *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks and citations omitted). Its purpose is "'to protect the integrity of the judicial process' . . . by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Id.* at 449-50 (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982); *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)). Judicial estoppel is an equitable doctrine that is to be invoked by a court at its discretion. *Id.* at 750.

The Supreme Court has identified three factors for courts to consider when determining whether to apply the doctrine. First, a court should consider whether the party's later position is clearly inconsistent with its earlier position. *Maine*, 532 U.S. at 750. Second, it should examine whether the party succeeded in persuading a court to accept its earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (quoting *Edwards*, 690 F.2d at 599.) Finally, a court should look to "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. The Sixth Circuit has particularly emphasized the second factor, noting that "judicial estoppel governs a dispute only if the first court adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Pennycuff v. Fentress Cnty. Bd. of Educ.*, 404 F.3d 447, 453 (6th Cir. 2005) (internal quotation marks and citations omitted).

---

⁶ In advancing its judicial estoppel argument, Trane relies on the jurisprudence of Tennessee's courts. (Docket No. 26 at 6-7.) However, "[f]ederal standards govern the application of judicial estoppel in federal court." *Pennycruff v. Fentress Cnty. Bd. of Educ.*, 404 F.3d 447, 452 (6th Cir. 2005) (internal quotation marks and citations omitted).

In her earlier workers' compensation Complaint, the plaintiff alleged that, on May 24, 2011, her physician released her with "permanent restrictions of avoiding left thumb forceful pinching/repetitive impact."[7] (Docket No. 26-1 ¶ 6.) The plaintiff also alleged that she was "not returned to her employment at an equal or greater wage due to her aforementioned permanent work restrictions." (*Id.*) Trane contends that these assertions contradict her later allegation in the Second Amended Complaint that she was released without restrictions. (Docket No. 26 at 5, 7.) However, in advancing this argument, Trane fails to properly account for context. The Second Amended Complaint actually alleges that her physician provided her with a "conflicting return to work form dated May 24, 2011 . . . which indicated that she could return to work with no restrictions but should avoid forceful pinching and repetitive impact of her left thumb." (Docket No. 22 ¶ 10.) This allegation is consistent with the contents of the May 24, 2011 return to work form that the plaintiff attached to her affidavit.

Read in whole, the Second Amended Complaint does not appear to stake out a position one way or the other as to whether the plaintiff in fact possessed physical restrictions to her left thumb. However, in her opposition brief, the plaintiff has clarified that she is, in fact, taking the position that she had physical restrictions upon seeking to return to work on May 24, 2011. (*See* Docket No. 32 at 10) ("It is absurd as the Defendant contends that the Plaintiff wants this Court to believe that she had no restrictions and was not disabled after returning to work on May 24, 2011.") Based on this representation, there is no clear inconsistency in the positions taken by the

---

[7] Because it is a public record, the court may consider the plaintiff's workers' compensation Complaint in the course of ruling upon the pending Motion to Dismiss. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (noting that "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" may be considered when reviewing a Rule 12(b)(6) motion to dismiss) (internal quotation marks omitted).

plaintiff in the workers' compensation Complaint and the Second Amended Complaint concerning the physical restrictions to her left thumb. Trane's judicial estoppel argument is thus without merit.

      C.     **Inconsistencies with the Prior EEOC Charge**

Trane also contends that another apparent inconsistency requires dismissal of the plaintiff's ADA and Title VII claims. Specifically, it argues that, to the extent that the Second Amended Complaint can be read to allege that the plaintiff had physical restrictions when seeking to return to work on May 24, 2011, it contradicts an earlier assertion she made in a sworn EEOC charge that she lacked any such restrictions. (Docket No. 26 at 8-9.) This argument is also without merit.

The plaintiff has now clarified that she is taking the position that she had restrictions when she sought to return to work on May 24, 2011. It is not entirely clear that the EEOC charge, which appears to have been prepared by the plaintiff *pro se*, contradicts this position. While on the one hand, the plaintiff states in the charge that she was released to go back to work on May 24, 2011 without physical restrictions, on the other, she asserts that she was treated less favorably for purposes of Title VII than several similarly situated white employees having physical restrictions.[8] (Docket No. 26-2.) This ambiguity within the charge is not entirely surprising, given the confusing nature of the May 24, 2011 return to work form.

---

    [8] Since an EEOC charge is a public record, the court may consider it while ruling upon the pending Motion to Dismiss. *See Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (noting that matters of public record may be considered when reviewing a Rule 12(b)(6) motion to dismiss); *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802-03 (8th Cir. 2002) (stating that an EEOC charge is a public record); *Kovac v. Superior Dairy, Inc.*, -- F.Supp.2d --, No. 5:12-cv-01467, 2013 WL 978217, at *3 (N.D. Ohio Mar. 12, 2013) (same).

But even if the EEOC charge was inconsistent with the plaintiff's current position, the court does not believe, under the present circumstances, that such an inconsistency requires dismissal of the ADA and Title VII claims. For one thing, the plaintiff cannot reasonably be said to have succeeded before the EEOC in maintaining any sort of position. Indeed, the EEOC terminated its processing of the plaintiff's charge and issued a Right to Sue letter at her request.[9] (Docket No. 11-1.) In addition, Trane has not argued that it has been prejudiced by any inconsistency.[10]

### D. Statute of Limitations

Trane next argues that all of the plaintiff's claims are time-barred under the applicable statutes of limitation. Under both the ADA and Title VII, a charge filed with the EEOC is only timely if it is filed within either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. §§ 2000e-5(e)(1), 12117(a). When, like here, a plaintiff "initially instituted proceedings with a State or local agency," the 300-day period applies. 42 U.S.C. § 2000e-5(e)(1). Moreover, under the THRA, an action must be filed within one year "after the alleged discriminatory practice ceases." Tenn. Code Ann. § 4-21-311(d). The TDA incorporates this one-year limitations period. Tenn. Code Ann. § 8-50-103(c)(2).

---

[9] The Right to Sue letter was attached as an exhibit to the plaintiff's Amended Complaint. Thus, it may be reviewed by the court while disposing of the pending Motion to Dismiss. *Weiner*, 539 F.3d at 332.

[10] The court acknowledges that Trane does not invoke the doctrine of judicial estoppel as grounds to dismiss the plaintiff's ADA and Title VII claims based on the inconsistency between the Second Amended Complaint and the prior EEOC charge. Nonetheless, Trane's arguments with respect to the EEOC charge are similar in nature to its contention regarding the alleged inconsistency with the state court workers' compensation Complaint. Thus, the court finds the previously articulated judicial estoppel factors to be relevant here.

The Second Amended Complaint alleges that Trane discriminated against the plaintiff by failing to accommodate her disability and by failing to select her for open positions for which she was qualified to work, both of which are discrete acts of discrimination for purposes of federal law.[11] *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (stating that a failure to hire constitutes a discrete act); *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004) (noting that a failure to accommodate is a discrete act). As the Supreme Court has explained, a discrete act occurs on the day that it happens, and thus a party "must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Morgan*, 536 U.S. at 110.

The plaintiff's EEOC charge, filed on May 17, 2012, encompasses discriminatory conduct occurring between May 24, 2011 and May 10, 2012. In this charge, the plaintiff alleges that Trane, in violation of both the ADA and Title VII, failed to accommodate her and also failed to select her for open positions within the company for which she applied. Again, both of these statutes preclude the plaintiff from seeking recovery for discrete acts that occurred more than 300 days before May 17, 2012. Of the six discrete acts alleged in the Second Amended Complaint, three occurred outside the statutory period - namely, Trane's denial of the plaintiff's request for a reasonable accommodation on December 9, 2010 and its subsequent refusal to accede to her requests to return to work on May 24, 2011 and in June 2011.[12] Thus, the plaintiff's ADA and Title VII claims premised on these specific discrete acts are time-barred and

---

[11] Accordingly, the continuing violation doctrine is not applicable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (holding that the doctrine does not apply to discrete acts of discrimination); *see also Sharp v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).

[12] For the purposes of this analysis, the court has given the plaintiff the benefit of the doubt and has assumed that Trane denied her June 2011 request to return to work on the last day of the month.

will be dismissed. The ADA and Title VII claims premised on the remaining three discrete acts, each of which involve Trane's failure to select the plaintiff for open positions to which she applied, shall proceed to discovery.[13]

The same outcome attaches to the plaintiff's TDA and THRA claims. At the outset, the court notes that the TDA does not contain a reasonable accommodation component. *See Cardenas-Meade v. Pfizer, Inc.*, No. 12-5043, 2013 WL 49570, at *2, n.3 (6th Cir. Jan. 3, 2013) (per curiam) ("The TDA does not require that a reasonable accommodation be made"). Thus, to the extent that the plaintiff is advancing a failure to accommodate claim under the TDA, that claim will be dismissed.

As for Trane's alleged failure to select the plaintiff for open positions within the company, Tennessee law treats such conduct as a discrete act. *See Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 511 (6th Cir. 2008) (stating that a failure to hire constitutes a discrete act under Tennessee law). The plaintiff commenced this action on October 25, 2012. Again, the same discrete acts that fell outside the 300-day window for purposes of the ADA and Title VII are similarly time-barred here, as they each occurred more than one year before the plaintiff filed this suit.[14] However, the TDA and THRA claims premised on the remaining three discrete acts, each of which again involve Trane's failure to select the plaintiff for open positions, shall proceed to discovery.

---

[13] As the court has already noted, the plaintiff applied to these open positions on April 3, 2012, May 25, 2012, and June 25, 2012.

[14] The plaintiff's attempt to save these acts under the continuing violation doctrine is unavailing. *See Booker v. The Boeing Co.*, 188 S.W.3d 639, 647 (Tenn. 2006) (stating that the THRA's statute of limitations, which incorporates the continuing violation doctrine, "does not operate to extend the limitations period on discrete acts of discrimination").

## CONCLUSION

For all of the reasons discussed herein, the defendant's Motion to Dismiss Second Amended Complaint (Docket No. 25) will be **GRANTED** in part and **DENIED** in part, while its Motion to Strike (Docket No. 33) will be **DENIED**. The Motion to Dismiss will be **GRANTED** to the extent that it seeks to dismiss: (1) all of the plaintiff's claims premised on the defendant's denial of her request for a reasonable accommodation on December 9, 2010 and its subsequent refusal to accede to her requests to return to work on May 24, 2011 and in June 2011 as time-barred; and (2) the plaintiff's TDA claim, to the extent that it alleges a failure to accommodate. The Motion to Dismiss will otherwise be **DENIED**.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge